My notes indicate that the appellant, Granite Rock Company, will split their argument ten and ten. Is that right? Yes, Your Honor. All right. If you want to keep any time for rebuttal, just keep an eye on the clock, because we won't be... I don't have a whistle. All right? Your Honor, could I just note one thing for the record? Granite Rock is the appellant. In our case and another case, they're actually an appellee. That's correct. That's the case that's submitted on the briefs, right? No. No, it's in these cases. But the 287 is the appellant in one case. The international whom I represent is the appellee. So, Granite Rock is not the appellant. It's not the appellant that all matters. All right. Does that make a difference in the order in which they should be arguing? It does to this extent, Your Honor. What we considered is that what Mr. Mathison and I will do is address the issues as appellant, and then reserve time to address any issues that are raised by the 287 as appellant. And then we would address those afterward, if that makes sense to the Court. Is that satisfactory? That's satisfactory. All right. We'll proceed that way. All right. May it please the Court, Alan Levins and Gary Mathison for Granite Rock as the appellant and the appellee. This case is about an illegal strike by the Teamster defendants that was damaging to the company and damaging to the company's literally hundreds of employees who lost 11 weeks of paychecks because of the strike. The strike was not for better wages. The strike was not for better benefits. Agreement on those issues had been reached in the morning of July 2, 2004. What the strike was about was an attempt to get Granite Rock to sign a hold harmless agreement holding the Teamster's unions harmless for their actions. The strike was unlawful because it was in furtherance of the union's demand that Granite Rock sign that agreement, a nonmandatory subject of bargaining, and it was unlawful because it was in violation of the party's collective bargaining agreement. The two ways that the union violated the law were distinct and different. We are here also, as you know, after a six-day trial in federal court where the jury unanimously determined that Granite Rock and the union had reached an effective agreement on July 2, 2004. Local 287's attempts to overturn that verdict must be rejected. The verdict is supported by substantial evidence. The court's rulings below were correct except for two that we will address at this point. First, the court should not have ordered the damage phase of this trial to arbitration. The union's conduct in the court below was a repudiation and a waiver of the right to go to arbitration over the damage issue. Further, for judicial economy, that matter should be heard in federal district court. Second, the court dismissed Granite Rock's cross complaint. Let me ask you, how is any economy undoing it now since the jury didn't already decide it? I'm sorry? What's the economy undoing it now? It's intertwined with the cause of action against the international, Your Honor. So the the There's economy only if we find in your favor against the international. The economy argument goes to that. Yes. All right. I understand. As we've discussed, I will address the first issue in our appeal. Mr. Mathison will address the second, and then we'll reserve time to act as appellee to 287's arguments. Counsel. Yes. In your argument, you might want to address what the various circuits have done. Because at least my impression is that the great weight of authority is contrary to Granite Rock's making of a claim against the international, which was not a party to the labor agreement. I'm going to defer that to Mr. Mathison, and we, of course, will address that and have addressed that in our briefs. The union repudiated the collective bargaining agreement. It waived any right to arbitration with respect to damages. It is black letter law that a party to a contract should not be able to repudiate that contract and then make a claim of rights under that agreement. And yet that is exactly what the union did in this case. How did it repudiate the contract? It came into court, Your Honor, and said there is no contract. When the court dismissed the lawsuit early on in the proceedings, the union never claimed that the court didn't have the right to do that because of an arbitration clause. When we argued for a new motion and successfully did so, the union never came forward and said, by the way, Your Honor, you should have considered the fact that you didn't have the jurisdiction to dismiss this case on the merits because you should have deferred to arbitration. It was only after the court ruled in our favor on our motion for a new trial and only after the union's strike ended that the union got religion, so to speak, with respect to arbitration. The union was also silent about arbitration during the pretrial conference, where it was decided that the district court would determine issues of breach and issues of damages. It's fundamentally unfair for the union to accept the court's jurisdiction to decide the merits while that decision is favorable to the union and then claim the court cannot decide the merits of Granite Rock's damage claim because an arbitrator must. Black letter law and the Ninth Circuit cases require a finding of repudiation and waiver of the contractual right to arbitration. We've also discussed in our brief the changing position that the union had with respect to arbitration. And we've also discussed the prejudice that Granite Rock faced. The issue of judicial economy arises with respect to the claim against the international. And at this point, what I would like to do is have Mr. Mathiasen address that issue. May it please the Court, my name is Gary Mathiasen. I'm representing Granite Rock on the IBT appeal. They were dismissed from the case, and we are appealing that decision. Twenty-three years ago, I came before the Ninth Circuit, a different panel, and argued the Lumber Workers case, which is the primary authority cited by the other side. This case actually is foundation for where we are today. In that case, the Court rejected a claim on the grounds that there was no existing contract that had been breached and made that a requirement. This is effectively what painters and decorating contractors lays out as a foundation for 301 jurisdiction, namely a breach of a collective bargaining agreement doesn't have to be by the party to the collective bargaining agreement. We've got long-established Supreme Court authority with regard to the fact that it doesn't have to be a signatory. The statute reads violation of contracts. Correct. Hasn't that been interpreted in this circuit as meaning breach of contracts? Correct. How can a nonparty breach a contract? By inducing another party. That's a tort. He's not a party to the contract. You can intentionally interfere with the performance of a contract without being a party to the contract, but you cannot breach a contract, at least as I remember my contract law, unless you're an obligor. There is extensive Supreme Court authority on the fact you don't have to be a signatory. No, but you have to be a party. You have to be a party to the contract.  You don't have to be a party to the contract. You don't have to be an obligor. You don't have to be a party to the contract. What's the extensive Supreme Court authority that tells us that? Well, it starts right at Lincoln Mills. It goes to Alice Chalmers. Lincoln Mills. Alice Chalmers. Those are very familiar names. And we provide several cases in the brief where non-signatory status still allows the individual to come forward. The classic case is an employee. An employee doesn't get a benefit under a collective bargaining agreement. The employee is not a party to the collective bargaining agreement. But he's a third-party beneficiary. As is the circumstance here. The international is a third-party beneficiary? The international effectively acted and forced this breach of a collective bargaining agreement for its own benefit, for its own benefit, because during this, the reason this happened is that the international wanted immunity from litigation. Once the contract was done, all of its economic power was gone. This international is intertwined in the strike, intertwined in the issues, has its own international representative involved. Who was going to get immunity if the hold harmless was signed? The international and the locals. And the local and the people who participated in the strike, right? Potentially the people who participated in the strike, but they wouldn't have liability in any event. It would be the international and the locals. All right. Now, let me ask you this. You've taken a strong position here that the Supreme Court authority dictates the result. Does that mean that all of those other circuit decisions are contrary to the Supreme Court? Not at all. The other circuit courts, and this replies to the question raised, which is the overwhelming authority. If you go into each circuit, and we did that in our brief, and you look at the three factors of this case, first a very close relationship between the international and the local, close relationship being the first test, then the induction or inducing of a breach, causing the breach to happen, the second factor, and then for a direct benefit, the third factor. This is the three-part test, and you take that and transplant it across the cases, you find that a majority of the circuits would recognize it. What they don't do, what they don't do is they don't call it necessarily tortious interference, because once you get through the gateway of having a collective bargaining agreement that's been breached, then there's a common law to be fashioned by the Federal courts. And that could be a hybrid. It could be just another person or entity that's liable for the breach since they caused it. It could be put into the category of a tort or any number of different characterizations. Those characterizations start disappearing in their significance. And what you're looking at is fundamental injustice. If this action is not followed, what we face is a circumstance where an international union that has financial control, and that's what we've alleged, over its local, is operating as the agent, as the principal driving force, can go into a labor dispute, have a contract reached by the local, ratified by the employees, and say, forget it, we don't care about it because we want some additional concessions. Have the power to do that with no reach under Section 301. Excuse me, counsel. Yes. Wouldn't the international then potentially have some other liability? But the issue that we have is do they have liability under the LMRA? They have no liability if they can't be reached under 301. Under 301, we argue they do have liability. If not, 301 preempts any state cause of action. In California, we had a cause of action that would work up until 1947. Congress took it away, but that made sense for a consistent body of Federal law. The only other possible way, Your Honors, that you could try to reach them is through the National Labor Relations Board, and it's very interesting to note carefully what the opposing party in their brief placed. They primarily relied on one NLRB case decided in 1992, Paper Workers International, and then that same case on appeal. If you read that case in detail, it has nothing, nothing to do with our facts. This is an international that was the bargaining representative. They signed the contract, and they were effectively dealing with a pre-contract situation. Once you get to a contract being formed, then the post-contract conduct is really intended to be regulated by 301. It would be a travesty, and I offer to you the internationals that have participated in the amicus briefs are looking at this situation as to whether an international could be completely free of liability. I've waited two decades to bring this case back to the Court because we don't see these facts very often. But if we give the international immunity, I think the far greater danger would be more conduct of this type encouraged by an international that couldn't be reached under any possible legal claim. Thank you very much. What's your precedent that you rely on to say a claim against the international, if it's a non-party, would be preempted? Would be preempted? Well, there's a whole series of cases. I can look up a couple directly, but that is covered in several different. There's certainly preemption of a claim against a party to the labor agreement that's arguably for conduct, arguably within the scope of the labor laws. But what case says you'd have preemption on a claim against the international when it wasn't a party? Yes, I'll give you that cite. We have it in our brief. And also, if you think about it logically, if the whole issue of the breach of the contract, the interpretation of the no-strike clause, 417 words, were subject to litigation by local 287 in federal court and by an international in state court, you'd have inconsistent outcomes potentially, and that's exactly what the Landrum-Griffith Act was passed to avoid, was the ability to bring it into a federal forum. And that's what we're requesting here. I will, in our reserved time, respond. Thank you. Don't forget that case that you mentioned. May it please the Court. Yes, I'm Peter Nussbaum, and I represent the Teamsters International, and I'll try in my argument to answer some of the questions that all of you posed to Mr. Matthiessen. The sole issue in our case is whether Granite Rock can bring a claim for tortious interference against the international under Section 301. Granite Rock is asking this Court to engage in what the Fourth Circuit and Coventry Coal called inventiveness when they refused to rule that such a tort can be brought under 301. Doing what Granite Rock is urging is not only contrary to the language of 301 in the legislative history, but would greatly expand the jurisdiction of this Court, which I'll talk about in a moment. The answer, as you had indicated, Judge Gould, and you're absolutely right, is that the law in virtually every other circuit is against what Granite Rock is arguing for. They attempt to say how they think the circuits would now rule on that issue, but the decisions are there, and except for the Third Circuit, they are unanimous that you cannot do what those circuits have considered it. And the reason that they have found that you cannot bring a claim under 301 for tortious interference is because the claim under 301 must be based on a breach of duties that are found within the contract. Section 301 talks about violations of contract. Therefore, to have a 301 claim against a party, it must arise from a violation of contract. That is not what Granite Rock's claim is about. Their claim is tortious interference, and as they state, allege in their complaint, their complaint against the International is that we induced somebody else to violate the contract. Now, that gives them the right to bring a 301 action against Local 287, but it does not give them the right to bring an action against us because our claim of tortious interference, the claim that's being brought against us, inducement, that does not involve a violation of the terms of the contract. But what's your view about the ability of Granite Rock to bring a claim against you in State court for a tort? They cannot do it. And this may seem like an unusual situation, but it's not as uncommon as the other. It seems a lot like ERISA to me. Yes, you're exactly right. It's not an uncommon situation. When Congress decides to regulate an area, as they've done with pensions, they've done with copyright, they've done with labor law. I understand your position. They set up a scheme, and very often in doing that, there are torts that existed under State law, under common law, that are eliminated. Congress has struck a balance, and that's what it did in this particular case. I should point out that at the same time that Section 301 was being enacted, in the same statute, Congress actually did create a very limited tort right in Section 303 for exactly what they're talking about, although the facts of their case wouldn't fall under it. And that's for business interference when you're engaging in secondary conduct, that there is not only an unfair labor practice under Section 8b-4 of the National Labor Relations Act, but also a cause of action under Section 303, which they can't blame or couldn't bring here because it is not. So, Mr. Nussbaum, let's take a hypothetical. Let's suppose that a gang of thugs on an eastern seaboard, reminiscent of a movie with Marlon Brando, right? I'm old enough to remember it. All right. And I was living in New York. Cause a union to breach its contract. What you're saying is under 301, the union can be sued, the local union can be sued, but the gang of thugs can't be sued under 301 because they're not a part of the contract, and they can't be sued in state court because of preemption. So the gang of thugs walks. Now, what's the difference between that and the allegations of the complaint here as against the International Brotherhood of Teamsters? Well, there's a very critical one, and we point it out in our brief. There's no allegation that the International engaged in violence. And that is not the case. No, no. Neither do the thugs. They said, we're not going to engage in violence. We're going to threaten violence. That's all. We're not going to engage. That is, that would be, that would not give them a claim under Section 301. What you're saying is that in that situation and in this, because the IBT is not a signatory. No, no. Or not a party. No, I need to straighten that out, and I want to address the point that Judge Gould raised. The issue doesn't depend on whether the IBT is a signatory. Some courts have used that analysis. That's not the proper analysis. The analysis, because there clearly are cases where a third party can be a plaintiff or a third party can be a defendant in a 301 case. That's not the critical issue. As this Court has laid out the standard in painting and decorating, in majestic housing, and finally in lumber workers, there's a two-prong test for 301. There has to be a colorable claim of a breach of contract by the defendant whom you're trying to sue, not some other defendant. But the second part of it is that the case has to be focused on, the claim has to be focused on and resolved by the collective bargaining agreement. That's the standard. You don't have to be a signatory. What's missing in this case is that their claim against the international is not focused on and is not governed by the terms of the collective bargaining agreement. Now, they argue, well, the essence of our case is an interpretation of the collective bargaining agreement. That's the essence of their case against Local 287, breach of contract. That is not the essence of their claim against us. The essence of their claim against us is we induced somebody else to breach the contract. That is not a claim for violation of contract. That is, as I think Judge Gould or Judge Beyer, you pointed out, that is a tort claim. And I think it's very clear from the wording of the statute, which talks about violations of contract, there's no way to shoehorn inducing someone else to breach a contract into those words, violation of contract. What Congress was attempting to do in Section 301, and we've cited all the legislative history to you, was to make contracts enforceable, make them enforceable about the terms and conditions of the contract, about the promises that parties made in their contracts. That is what 301 did. It wasn't intended to do any more. Kennedy. You're coming to the end of your time, and Mr. Bonsill has 13 minutes, right? Bonsill is yellow. I guess I'm just about done. There it is. Thank you very much, Your Honors. Thank you. May it please the Court. My name is Robert Bonsill. I'm an attorney with the law firm of Beeson, Thayer & Bodine, representing Teamsters Local 287 in this case. In the time allotted, I'll try to address three issues. First, whether Granite Rock should be collaterally estopped from arguing the date of contract ratification. Second, whether the issue of contract formation should have been referred to arbitration by the Court. And finally, if the Court properly retained jurisdiction over the contract formation issue, whether that matter should have been resolved by the trial court rather than submitting the issue to a jury. First, collateral estoppel. There is something patently unfair about the situation where the union now is dealing with two diametrically opposed and inconsistent factual conclusions regarding the date of ratification of the collective bargaining agreement. The doctrine of collateral estoppel or issue preclusion is specifically designed to prevent such injustices by limiting the number of times a defendant may be called upon to defend itself on a particular factual pattern, excuse me, a factual issue. What is it that called upon you to defend that in the NLRB proceeding? Excuse me, Your Honor. What is it that called upon you to defend that position? It looks to me, when you look at what was decided originally, what you're relying upon for collateral estoppel or issue preclusion isn't there. There was no real argument that it was July 2nd instead of August 2nd. Can you point to something that makes it clear that issue was actually litigated? Yes. The decision handed down by the administrative law judge and that was adopted by the court specifically indicates on no less than four separate references in the decision itself that Granite Rock had contended before the administrative law judge that, in fact, the collective bargaining agreement was, in fact, ratified by the members on July 2nd. For example, on page 9 of the decision, the administrative law judge said as follows, quote, the employer contends that the employees did, in fact, ratify the contract on the morning of July 2nd. However, the record does not support such a finding. But is that merely background or is that something that was actually litigated? My impression is that it was not litigated. That was not the theory that was used in pursuing the claim. The theory that was used is that it should have been ratified, that a vote should have been taken, and it wasn't. Yes. I think the union's response to that would be as follows, that the question of whether a matter was actually litigated is not dependent upon how well a party exercises its opportunity to litigate. Rather, there is a question of whether Granite Rock had a full and fair opportunity to present its case. The rules and regulations of the National Labor Relations Board specifically indicate that as one who filed a charge, Granite Rock was a party. That's undisputed, but Granite Rock will allege that it was merely a witness, a bystander to the proceeding. The facts do not bear that out and neither do the regulations of the board. Specifically, as a party, Granite Rock was not only entitled to appear, which it did, but they were entitled to call witnesses and introduce evidence. In addition, they were entitled to cross-examine all witnesses. They were entitled to make oral arguments and submit briefs. They were even entitled to propose findings of fact and conclusions of law, as well as proposing alternative remedies. We believe that if the court looks at the record, it's quite clear that Granite Rock did all of those things. So we really believe that they were not just a party in name, but a party in fact at that proceeding. The trial court rejected collateral estoppel for two reasons. One, that it wasn't actually litigated. And I believe that the record indicates that the date of ratification was truly litigated. The other point that the trial court raised as a basis for denying its application for collateral estoppel was that Granite Rock was not in privity with the general counsel. We believe that the trial court perhaps was at a disadvantage because it decided that issue one month before this Court handed down its decision in Rines-Pastabella v. Visa. And I believe, Judge Bea, you were on that panel. That Court, that decision specifically says that collateral estoppel being asserted against a party, the element is met if, in fact, the person was a party in the prior proceeding or in privity. The trial court seemed to be. That was not an NLRB case. Excuse me? That was not an NLRB case. The pizza case was a consumer's fraud case. I think that that is correct. It was not an NLRB case. I believe the principles of Rines-Pasta nevertheless would apply. The union was asserting that Granite Rock was a party to the proceeding, and the trial court found that they weren't in privity. We believe that Rines stands for the proposition that you can be one or the other. You don't need to be both. You do not need to be a party and in privity. Assuming that's so, though, are you in privity if the person with whom you're supposed to be in privity refuses to make your argument? The general counsel certainly had a theory of the case. And we don't deny for a moment that Granite Rock had a different theory. I mean, you might prevail on the argument that Granite Rock was a party, but isn't it a harder argument to make that Granite Rock was in privity with the general counsel who wouldn't make their argument? No. I think you're correct, Your Honor. It would be much more difficult if we had to rely upon the fact that Granite Rock was in privity. We don't believe that they had exactly the same view of either the facts or the theory of the case. But they were a party. Yes, Your Honor. Counsel, my question is, you know, if we say or if we decide that contract formation should have gone to the arbitrator, then wouldn't we not, we would not reach this collateral stop? That's correct, Your Honor. I believe that's the case. So why shouldn't we talk about that issue first? I mean, if that issue eliminates this one, maybe you should make your argument on that. That's a perfect segue. I will take Your Honor's advice. Turning to the contract formation question, Granite Rock's anomalous prosecution of its case against the union has created what we would describe as an absurd situation. There's no doubt that Granite Rock's claim against the union is that the local violated the no strike clause of the collective bargaining agreement. And there's no question that the collective bargaining agreement contains a broad arbitration clause. Rather than, let me say it this way. The union believes that what the union, excuse me, what Granite Rock should have done, and could have done in this case, was to file a petition in federal court seeking to compel arbitration. If they had done that, the union would have raised its affirmative defense that the contract was not ratified on July 2nd, and therefore there was no breach of the no strike clause because the contract wasn't in effect. Instead, what Granite Rock has done in this case improperly is to file a breach of the contract claiming damages against the union and using the union's affirmative defense as a way to argue that the entire matter should be submitted to a jury. We believe that the courts and this Court has developed an analytical framework to deal with such absurd situations. Specifically. Scalia, you've gone too fast for me. Suppose that Granite Rock had done exactly what you suggested. Yes. Where would the question of the existence of the contract have been decided then? Before the arbitrator. Even though you disputed that it was such a contract? Yes. We believe that the fact pattern would be analytically on all fours with the case of Teledyne v. Cone Corporation. In that particular case, the parties Teledyne and Cone were seeking to negotiate an exclusive distribution agreement. The parties, after the negotiations, developed a document which was entitled draft to be finalized by the Cone legal department. And that was the only document that the parties created. Subsequently, Teledyne brought a breach of contract action against Cone. And Cone raised two defenses which are remarkably similar to the defenses that the union raised in this case. Well, how is it different, though, from the hypothetical case or the other case where there's no signal? I mean, there was no agreement. John Sue Smith says the contract exists. And Smith says, I never agreed to that. I didn't sign it. Isn't that the same thing you're saying here? The union is saying, no, no, we never had an agreement. No. I think what Your Honor is referring to is that narrow exception which was created by Three Valleys.  But why doesn't that apply here if you're saying there is no contract? Because if the Court looks closely at the Teledyne case, we'll find that the plaintiff, Granite Rock, was relying upon a collective bargaining agreement and was not challenging it. That collective bargaining agreement concededly had a very broad arbitration provision. It was the defendant who raised a challenge to the contract as a whole, not challenging the arbitration provision. I don't know. I understand that. But why is that different from a hypothetical where Smith simply says there is no contract? In your case, the union says there is no contract. Because Granite Rock is the party seeking to enforce the contract. It makes a difference as to which party says it. Is that what you're saying? We should draw a distinction between plaintiff or defendant as to whether or not the issue is decided by a court or decided by an arbitrator? That doesn't make much sense to me. Well, it's not which defendant, plaintiff or defendant. Rather, if the Court looks to the Three Valleys case, it refused to arbitrate the issue because the plaintiff in that case, a group of public entities that had sued E.F. Hutton, was claiming that the person who signed the investment contracts didn't have the authority to bind them. And the Court said, we can't send that matter to arbitration. Why? Because, quote, a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate. I know what it says, but why should we treat it differently because it's the other party that contests the legitimacy of the contract? I can't get my hands around why that makes a difference. All I can say is that I believe that the Three Valleys Court cited approvingly of the decision handed down two years earlier in the Teledyne case. Specifically, the Three Valleys Court said the fact pattern in that instance was quite different than Teledyne. In Teledyne, the plaintiff had asserted the validity of the underlying contract, and the plaintiff had not challenged the arbitration provision. And therefore, the Court in Three Valleys, which we believe was creating a narrow exception to the Negrampa paradigm of contracts that challenge the challenges to contracts based on the entire contract versus challenges to the arbitration provision, the Court specifically said that the plaintiff in Teledyne had no grounds to repudiate the agreement, and that to allow the plaintiff to circumvent the arbitration provision by bringing its claim in Federal court created an absurd result. We believe that Teledyne, Three Valleys, and Negrampa all are quite consistent and should be read to by this Court to reach one conclusion, and that is the party who is relying upon the contract, whose very claims depend upon the contract, and that same party not contesting the arbitration provision should not be allowed to use the defendant's claim that there might be a challenge to the agreement as a whole as a basis to circumvent its agreement to arbitrate. It does make a difference whether it's the plaintiff or the defendant. I mean, that's what you're telling me. Well, granted, Rock, I think, would have this Court believe that it's always the defendant who gets to make that decision. And we don't believe that that's correct. We think that what the narrow exception in Three Valleys stands for is that the Court may look to whether a party, plaintiff or defendant, is challenging the very existence of the contract. But didn't your client challenge the very existence of the contract? Correct. But we were not being compelled to arbitrate. If the union, which was challenging the contract, had said in this case, we refuse to go to arbitration, we would be in the situation described by Three Valleys. But we're asking to go to arbitration. We're asking to abide by the agreement, which puts us four square. Which you deny, an agreement you deny was executed. No. In fact, the agreement was executed. Well, I mean, it wasn't executed on July 2nd. No. Factually, we contend that the agreement was not executed on July 2nd. Right. Okay. But we would refer, because there's a certain fact which I think is important in this case. The parties have a dispute about when it was ratified, but there is no dispute about the terms of the agreement, its beginning date and end date.  That the collective bargaining agreement was made effective by both Granite Rock and the union on May 1st of 2004, which predates the period that the employer claims there was a breach of the no-strike clause. This fact wasn't even addressed by the NLRB, and it wasn't addressed by the court below. We have a contract that covers the entire period, and yet the court seemed to ignore that. This was clearly something that should have been arbitrated. We would also contend that contract formation is analytically no different than contract termination. And this Court, in the camping construction case, the Ninth Circuit, has held that when a contract expires or when somebody, one party takes steps to either repudiate or terminate it, it shouldn't be reserved for the court, but should be sent to arbitration as long as the contract has an arbitration clause in it. Analytically, there's no basis to distinguish contract formation issues different than contract termination issues. Both should be referred to the arbitrator unless a party is challenging the arbitration clause itself. Then that would fall within the Negrempa exception first enunciated by Prima Pate. Kennedy. Mr. Boswell, we've kept you longer than your time. It's not your fault.  Thank you very much, Your Honor. I think, Mr. Levin, we'd like to hear either from you or from Mr. Mathiasen on this last issue, why this matter shouldn't be arbitrated, why the trial court did not err in granting summary judgment on that issue. The answer is simple. Granite Rock never agreed to arbitrate the issue of contract formation. The issue of contract formation is one, as Judge Sedgwick has pointed out, that the courts for close to 50 years now have said is a judicial determination. We do not let arbitrators determine their own jurisdiction. But wait a minute. Didn't Granite Rock allege in his complaint that there was a contract? Yes. And the union denied it. The union said we do not have a contract. So when you allege that it was a contract, you didn't allege comma except we never agreed to the arbitration comma. You said you allege the contract was formed that had an arbitration clause in it. Yes. But the arbitration clause states that we will arbitrate issues that arise under the agreement. More than suggest. That means that we have to have an agreement. AT&T Technologies, John Wiley, Livingston & Sons, cases over 50 years in labor law make it absolutely clear that when the issue is one of contract formation, then an arbitrator decides that. The union is mixing up those cases with cases where there already is a contract and one party or the other is saying, yes, we signed a contract, and that includes Teledyne. We signed a contract. However, one party or the other suggests for some reason that there was fraud in the inducement or the contract is voidable or what have you. There's not one case that the union cited to suggest that an arbitrator makes this determination where the parties disagree about whether a contract was formed. The cases that they rely on are the cases where the contract was formed and the other and one party. The point you're arguing is that your allegation that a contract had been arrived at on July the 2nd, 2004 is as to a contract which has an arbitration clause that only allows the arbitration of certain issues arising under the contract, one of which is not contract formation. That's right. If you look at first options, the recent Supreme Court case, Judge Breyer made it clear. A party does not give up the right to determine contract formation unless there is an unequivocal and express language to that effect. Justice Breyer, in which case? First options. As I say, this is 50 years of labor law, and we never agreed to have contract formation. The case decided by the union do not support their position in that regard. The cases, Three Valleys and the other cases, make it clear. The issue in those cases, yes, there was a contract, but one party says for one reason or another it wasn't enforceable. Let me go back to ---- Counsel. Counsel, what about the language in the grandpa and in Prima Paint? It seems to distinguish between challenging the contract as a whole or just challenging the arbitration provision. In the grandpa, as you well know, the issue was directed toward the arbitration provision. Ms. Negrompa said she was fraudulently induced to agreeing to arbitration. If anything, Negrompa supports our position, because the Court said where that kind of an allegation is made, it's up to the Court to determine the issue. In Prima Paint, there was no disagreement there was a contract, but one of the parties said it was voidable for whatever reason. I think it was fraud in the inducement. And the Court said, you've agreed, you both parties have agreed that there's a contract. Once you agree that there's a contract, you have agreed to have the arbitrator make the decision. Very, very different case from our case. Very different case from Sandvik, which we cited. Let me address the collateral estoppel issue in the remaining ten seconds that I have. We did not litigate that case, that issue, as Judge Sedgwick suggested. In fact, what happened was General Counsel, the master of the complaint, alleged that the ratification didn't occur on July 2nd. And the union agreed with that. There was no litigation. You go through the entire record, there is no litigation on that issue. What about the suggestion that you presented evidence and made arguments to the Congress? It's not true. It's absolutely not true. We stated at the outset that we ---- I know you asked to reserve your right, but during the course of the proceeding, did you do those things he said? No. Did not. Could not. Could not. The administrative law judge made it clear at the outset that we were bound for the purpose of that hearing to the allegations of the complaint. The administrative law judge would have held me in contempt if I tried to do that. I did not have the opportunity to do that whatsoever. It was not litigated, and I did not have the opportunity to do that. I'd like to allow Mr. Mathiasen to address a couple of the points that Mr. Estoppel made. Yes. What I would like to do is respond to the request of the Court for case citations. Right. And under the issue of non-signatory status, three Supreme Court decisions in particular, Smith v. Evening News, Waddell and Hines, all three are cited in the brief. What page of the brief? Page 22. And then with regard to 301 preemption, I think we cited on page 20, Lingell v. Norge. This is, again, 301 preemption in this area is well defined. This Court, Ninth Circuit, July 2, 2008, after the briefs were submitted in Ratchford R-A-C-H-F-O-R-D, has a full discussion of 301 preemption. Opposing counsel confirmed the understanding we have. You don't have 301 jurisdiction if the Court so finds that we can't bring it. You have 301 preemption of the entire area. And what it comes back to is that we never get a chance to litigate from the standpoint of the international the breach of the no-strike clause, 417 words that are going to require interpretation, and that is the essence of the breach that was induced and caused by the international, no remedy through the NLRB. It seems to put the Taft-Hartley Act upside down, legislative intent upside down, and fundamentally just unfair if somebody can act with this kind of malice as we've alleged. Maybe the trial won't prove it. We think we can prove it, that you can maliciously go in, control the events of the local, cause the breach, and then be able to rescind or pull back your presence and hide behind the local. This is a perfect area to do what the Supreme Court has talked about in Lincoln Mills, Alice Chalmers, and that is form a common law of 301 that would define under these narrow circumstances reaching the international. Thank you very much. Excuse me, Your Honor. May I respond to something that was just said because it went beyond just citing cases? All right. We'll give you a minute to do so. Yes, thank you. I just want to emphasize one thing in this case. This is not a situation of Granite Rock saying, gee, we had this strike against us and we suffered all these damages and we have no remedy. They do have a remedy. They're exercising their remedy against the party who allegedly breached the contract. What they're asking you to do is to create a different remedy, a remedy that was never meant by Congress, a remedy that has been denied in virtually every circuit, and a remedy that would greatly expand your jurisdiction because most of those cases in the other circuits where they denied bringing this type of claim were actually brought by unions. It's not just employers who would bring these cases. It's unions who would bring it. It would be adding impunitive damages. It would be a sea change in what the law is under Section 301. Thank you. Thank you, sir. The case of Granite Rock v. International Brotherhood of Teamsters is submitted, and I want to thank all counsel for their presentation. It was very instructive and has given us a great deal to think about. Thank you very much.
judges: Gould, Bea, Sedwick